```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
In Re: THE ROMAN CATHOLIC DIOCESE OF    :
ROCKVILLE CENTRE, NEW YORK,             :      23cv5541 (DLC)
                                        :      23cv6281 (DLC)
                        Debtor,         :
--------------------------------------- :      OPINION AND ORDER
                                        :
CLAIMANT NOS. 20018 and 90526,          :
                                        :
                        Appellants,     :
                                        :
              -v-                       :
                                        :
THE ROMAN CATHOLIC DIOCESE OF           :
ROCKVILLE CENTRE, NEW YORK,             :
                                        :
                        Appellee.       :
                                        :
--------------------------------------- X
```

APPEARANCES:

For Appellant Claimant No. 20018:
Christopher Michael Seleski
Tolmage, Peskin, Harris & Falick
20 Vesey Street
Suite 700
New York, NY 10007

For Appellant Claimant No. 90526:
Derek T. Braslow
Ketterer Browne & Associates, LLC
336 S. Main St.
Suite 2a-C
Bel Air, MD 21014

For Appellee The Roman Catholic Diocese of Rockville Centre, New
York:
Corinne Ball
Todd Geremia
Victoria Dorfman
Benjamin Rosenblum
Melanie K. Chan
Jones Day

250 Vesey Street
New York, NY 10281

DENISE COTE, District Judge:

These related bankruptcy appeals were filed on June 28 and July 20, 2023.  Claimant Nos. 20018 and 90526 (together, "Claimants" or "Appellants") appeal from a ruling by the Honorable Martin Glenn, Chief U.S. Bankruptcy Judge, dismissing their claims with prejudice in the chapter 11 bankruptcy case concerning The Roman Catholic Diocese of Rockville Centre, New York (the "Diocese" or "Debtor").  For the following reasons, the appeals are denied, and the Bankruptcy Court decision is affirmed.

## Background

The following facts are taken from the record in the underlying bankruptcy case and are undisputed.  The Court also takes judicial notice of the existence of judicial decisions and other public filings submitted in the underlying bankruptcy case.

I.   Factual Background

The Roman Catholic Church operates through dioceses, each working within a specific geography, under the leadership of archbishops or bishops who are responsible to the Holy See in the Vatican.  Debtor is the seat of the Roman Catholic Church

2

for Nassau and Suffolk Counties in Long Island, New York.  The
Debtor was established by the Vatican in 1957, from territory
that was formerly a part of the Diocese of Brooklyn.  When the
Debtor was established, it acquired various assets including
parishes, schools, camps, and other religious organizations that
formerly belonged to the Diocese of Brooklyn.  The State of New
York established the Diocese as a religious corporation by
statute in 1958.  See 1958 N.Y. SESS. LAWS Ch. 70 (1958), § 1.
The Diocese of Brooklyn continues to exist, serving the boroughs
of Brooklyn and Queens.

Claimants each allege that they were sexually abused by an
adult that was employed by a parish that belonged to the Diocese
of Brooklyn and was later acquired by the Debtor upon its
creation.  Both claims at issue allege sexual abuse that
occurred before the Debtor was established.

II.  Bankruptcy Court Proceedings

Following the enactment of the New York Child Victims Act
in 2019, which temporarily extended the statute of limitations
on certain sexual abuse claims, a large number of such lawsuits
were brought by claimants against the Debtor.  On October 1,
2020, the Debtor filed a voluntary petition for relief pursuant
to chapter 11, title 11, of the United States Code.  See In re

3

<u>Roman Catholic Diocese of Rockville Centre</u>, No. 20-12345 (Bankr.
S.D.N.Y. 2020).

On January 27, 2021, the Bankruptcy Court entered an Order
Establishing Deadlines for Filing Proofs of Claim and Approving
the Form and Manner of Notice Thereof ("Bar Date Order").  The
Bar Date Order set August 14, 2021 as the deadline for each
individual holding a "Sexual Abuse Claim" to file a proof of
such claim.[1]  The sexual abuse proof of claim form instructs
claimants to attach to the claim any "previously filed []
lawsuit against the Diocese in state or federal court."

Claimant No. 20018 timely submitted his proof of claim
form, dated April 29, 2021.  Claimant No. 20018 alleged that
from 1952 to 1953, when he was 10 to 11 years old, he was
sexually abused by Fr. Alfred Soave at St. Dominic Catholic
Church in Oyster Bay, New York.  Claimant No. 20018 noted on the
claim form that he had filed a lawsuit against the Diocese of
Brooklyn and St. Dominic Catholic Church in New York state court

---

[1] A "Sexual Abuse Claim," as defined in the Bar Date Order, is
any claim "against the Debtor resulting or arising in whole or
in part, directly or indirectly from any actual or alleged
sexual Conduct" which seeks "monetary damages or any other
relief, under any theory of liability, including vicarious
liability, any negligence-based theory, contribution, indemnity,
or any other theory based on any acts or failures to act by the
Diocese or any other person or entity for whose acts or failures
to act the Diocese is or was allegedly responsible."

related to the sexual abuse alleged in this claim.[2]  Claimant No. 20018 attached the verified complaint in that action to his claim form.

Claimant No. 90526 timely submitted his proof of claim form, dated August 12, 2021.  Claimant No. 90526 alleged that from approximately 1950 to 1951, when he was 15 to 16 years old, he was sexually abused by Fr. Raymond V. Stegmann at St. Boniface Catholic Church in Long Island.  Claimant No. 90526 indicated that he had not previously filed any claims against the Debtor, and he did not attach any civil complaint.

On February 21, 2023, the Bankruptcy Court entered an Amended Order Approving Claim Objection Procedures and Granting Related Relief ("Claim Objection Procedures").  The Claim Objection Procedures allow the Debtor to assert omnibus claim objections on the grounds set forth in Bankruptcy Rule 3007(d), including that "the Debtor is not liable to the claimant for the amount or claim asserted."  See Claims Objection Procedures § 3(a).  The claimant has 21 days to file any response to the objection (a "Response").  Where an objection is contested, the

---

[2] Because the Debtor filed for chapter 11 bankruptcy prior to Claimant No. 20018 filing his state court action, the Debtor could not be named as a defendant in that action.

Bankruptcy Court conducts a Sufficiency Hearing pursuant to
Bankruptcy Rule 7012(b).[3]

On March 3, 2023, the Diocese filed its Ninth Omnibus
Objection to Claims that Pre-Date the Existence of the Debtor as
a Religious Corporation (the "Objection").  The Objection sought
dismissal of claims that allege abuse that occurred prior to the
date of the Debtor's creation in 1957.  The Debtor argued, <u>inter
alia</u>, that those claimants had failed to adequately plead that
the Diocese is liable for conduct that pre-dates its existence.

On March 24, 2023, both Claimants filed Responses to the
Objection.  Both Claimants argued that there was insufficient
space to allege theories of successor liability on the Sexual
Abuse Claim Form.  Nevertheless, Claimant No. 20018 argued in
his Response that he alleged sufficient facts to state a claim
for successor liability against the Debtor because: (1) "In
1957, the Diocese of Rockville Center was created from a portion
of the Diocese of Brooklyn and St. Dominic's Catholic Church and
Fr. Albert Soave became part of the Debtor;" (2) "On or about
1957, the Diocese of Rockville Centre was formed from the
geographical jurisdiction and/or parishes and/or assets and/or
liabilities of the Diocese of Brooklyn;" (3) the Debtor did not

---

[3] Claim objections and Responses that raise disputed issues of
fact are heard at a Merits Hearing.

"refute anything regarding whether the Debtor expressly or
impliedly assumed the liabilities;" and (4) St. Dominic Catholic
Church and Fr. Alfred Soave "transferred from the Diocese of
Brooklyn to the Debtor."

Claimant No. 90526 also argued in his Response that he had
plausibly alleged successor liability.  Claimant No. 90526
reasoned that the Debtor expressly or impliedly assumed the tort
liability of the Diocese of Brooklyn because: "[t]here is no
evidence that the Debtor did not assume the liabilities of the
Diocese of Brooklyn;" "Debtor was carved out of, or in the
language of the Vatican, 'separated' from the Brooklyn Diocese;"
and because the Debtor had listed Fr. Stegmann on its list of
acused clergy, including years that predate Debtor's existence,
that was contained in the Debtor's notice of the bar date.
Claimant No. 90526 also argued that there was a de facto merger
of the Debtor and the Diocese of Brooklyn because "[i]n 1957,
the Diocese of Rockville Centre was formed from the geographical
jurisdiction of the Diocese of Brooklyn and St. Boniface and Fr.
Raymond Stegmann were transferred from the Diocese of Brooklyn
to the Debtor in 1957."  Claimant No. 90526's Response relies on
the proposition that the proof of claim form assumes that the
Claimant alleges successor liability, and that the Debtor failed
to refute it.

7

On April 5, a Sufficiency Hearing was held to determine
whether certain contested claims, including those filed by
Claimants, failed to state a claim against the Debtor.  Counsel
for Claimant No. 20018 in the bankruptcy action, Mr. Noaker,
argued that the Claimant had sufficiently pled successor
liability under the theories of express/implied assumption or de
facto merger, and that the Debtor had not "overcome their
burden."  Mr. Noaker pointed to paragraph seven of the verified
complaint attached to claim form No. 20018, which states "[o]n
or about 1957, the Diocese of Rockville Centre was formed from
the geographical jurisdiction and/or parishes and/or assets
and/or liabilities of the Diocese of Brooklyn."  Mr. Noaker also
argued that the Debtor "assume[d] liability for [the] Diocese of
Brooklyn and parishes related because they took over those
parishes."  He next argued that the theory of de facto merger
applies because "the operations of half of [the] Brooklyn
[Diocese] were taken over and then continued."  Lastly, Mr.
Noaker explained that he has "significant concern" that, if the
claims against Debtor are disallowed, "then Brooklyn can turn
around and say, no, wait a minute, you know, that was, that was
a liability or that was assumed by [the Debtor]."

Counsel for Claimant No. 90526, Mr. Braslow, also spoke
briefly at the Sufficiency Hearing.  He highlighted a document

produced by the Debtor which lists the Debtor's credibly accused clergy, including Fr. Stegmann at St. Boniface Catholic Church. Mr. Braslow noted that the document states that the abuse occurred in 1950 through 1957.  Mr. Braslow thus argued that "in the debtor's own documents, it indicates a credibly accused priest[] and the years, that it was under the control, at least arguably, assuming the liabilities of the Diocese of Brooklyn for this particular priest."

Following the hearing, and at the Bankruptcy Court's request, the Debtor submitted a declaration from its General Counsel, Thomas G. Renker ("Renker Declaration").  The Renker Declaration states that the Diocese did not assume any liabilities from the Diocese of Brooklyn with respect to the parishes and all entities within the territory that formerly belonged to the Diocese of Brooklyn.

On May 26, 2023, the Bankruptcy Court issued a Memorandum Opinion sustaining the Debtor's Objection and dismissing the claims at issue in this appeal with prejudice.  The Bankruptcy Court first noted that "[n]ot a single proof of claim or State Court Complaint sets forth a theory of successor liability."  Thus, in determing whether the Claimants had plausibly pled successor liability, the Bankruptcy Court relied "entirely on

those [allegations] contained in the Responses."  The Court
explained:

> As the Hearing was not evidentiary, the Court did not
> expect Claimants to submit evidence proving successor
> liability.  But to prevail at a Sufficiency Hearing,
> the Claimants needed to plead facts which, if true,
> provide a basis for explicit or implicit successor
> liability.

The Bankruptcy Court held that the Claimants had failed to
plausibly plead successor liability.  It stated:

> [T]he proofs of claim and State Court Complaints fail
> to make any allegations regarding successor liability.
> The additional allegations made in [R]esponses
> indicate that the Claimants would not be able to cure
> these deficiencies if given an opportunity to amend
> their claims.

Accordingly, the Bankruptcy Court dismissed the claims with
prejudice.  The Bankruptcy Court issued an accompanying
Order on June 9.

III. Appeal

On June 28, 2023, Claimant No. 20018 filed an appeal of the
Bankruptcy Court's decision.  On July 20, Claimant No. 90526
filed his appeal and a statement of relatedness.  That case,
23cv6281, was accepted as related on July 21.

Court Orders of July 20 and July 21 set a schedule for briefing the appeals.  The appeals became fully submitted on August 25, 2023.[4]

## Discussion

A bankruptcy court's factual findings are accepted on appeal unless they are clearly erroneous, and its conclusions of law are reviewed de novo.  In re DiBattista, 33 F.4th 698, 702 (2d Cir. 2022).  As outlined in the Claim Objection Procedures, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Claims Objection Procedures § 3(h)(iii); see also Fed. R. Bankr. P. 7012(b).  The dismissal of a complaint pursuant to Rule 12(b)(6) is reviewed de novo, "construing the complaint liberally, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016).

Appellants raise several arguments in support of their appeal and for reinstatement of their claims.  First, they argue that their claim forms or their Responses plausibly pleaded a

---

[4] The Appellants were given an opportunity to submit reply briefs, which were due on September 8, 2023, but chose not to file replies.

basis to assert that the Debtor was a successor to the Brooklyn Diocese, and that the Bankruptcy Court erred in dismissing their claims for failure to adequately plead successor liability. Second, they argue that the Bankruptcy Court committed three procedural errors: (1) providing inadequate space on the claim form to plead successor liability, (2) considering the Renker Declaration, and (3) denying Claimants the opportunity for discovery.  For the following reasons, each of these arguments is without merit, and the appeals are denied.

I.   Failure to State a Claim

The Bankruptcy Court found, and Claimants do not dispute, that federal pleading standards apply to a proof of claim filed in a bankruptcy proceeding.  See also 6 Collier Bankruptcy Practice Guide ¶ 107.03[2] (2023) ("[T]he pleading should assert enough facts to state a claim for relief that is plausible on its face."); In re Residential Cap., LLC, 531 B.R. 1, 12 (Bankr. S.D.N.Y. 2015).

Under Rule 12(b)(6) a party "must plead enough facts to state a claim to relief that is plausible on its face."  Green v. Dep't of Educ. of N.Y., 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Charles v. Orange County, 925 F.3d 73, 81 (2d Cir. 2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs." Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." Hamilton v. Westchester County, 3 F.4th 86, 91 (2d Cir. 2021) (citation omitted).

Under New York law, a corporation that purchases the assets of another corporate entity is "generally not liable for the seller's liabilities." New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006). Nonetheless, a buyer of a corporation's assets will be liable as its successor if:

> (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.

Id. (citation omitted); see also Schumacher v. Richards Shear Co., Inc., 59 N.Y.2d 239, 245 (1983). The proponent of successor liability bears the burden of demonstrating "that one

of the aforementioned exceptions to the general rule applies."
Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub.
Corp., 635 F.3d 48, 52 (2d Cir. 2011).

Appellants refer on appeal to three of the exceptions
identified here.  They argue that the Diocese may be liable as a
successor to the Brooklyn Diocese because of its express or
implied assumption of the liabilities of the Brooklyn Diocese,
because it was formed through a de facto merger with the
Brooklyn Diocese, or because it was a mere continuation of the
Brooklyn Diocese.  The second and third tests -- de facto merger
and the mere continuation -- are so similar that courts consider
them a single exception.  Cargo Partner AG v. Albatrans, Inc.,
352 F.3d 41, 45 n.3 (2d Cir. 2003).

A.   Express or Implied Assumption

To determine whether a successor corporation expressly
assumed the liability of its predecessor, courts look to the
relevant contractual language.  See, e.g., In re Stone &
Webster, Inc., 558 F.3d 234, 243 (3d Cir. 2009); Mitchell Mach.,
Inc. v. Ford New Holland, Inc., 918 F.2d 1366, 1369 (8th Cir.
1990).  In the absence of an express or formal assumption of
liability, an implied assumption "may be established by
circumstantial evidence."  8 Fletcher Cyclopedia of the Law of
Corporations § 4014 (2023).  "[T]he facts upon which the

implication or presumption of liability is predicated must affirmatively appear from the pleadings and proof." Id.

Claimants argue that the Debtor expressly or impliedly assumed the Diocese of Brooklyn's liabilities because, upon its creation, the Diocese acquired assets, including parishes, priests and good will of the Diocese of Brooklyn, and paid nothing for them.  Claimant No. 90526 also argues that "no agreement exists that states the Diocese [] did not assume the liabilities" of the Brooklyn Diocese.  These argument fail. Claimants have pointed to no contractual language or circumstantial evidence which suggests that the Debtor assumed any liabilities from the Brooklyn Diocese.  Moreover, as discussed supra, it is the Claimants' burden to plead liability and not the Debtor's burden to refute it.

B.   De Facto Merger and Mere Continuation

"[A] de facto merger occurs when a transaction, although not in form a merger, is in substance a consolidation or merger of seller and purchaser." New York, 460 F.3d at 209 (citation omitted).  At common law, the hallmarks of a de facto merger include:

> (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of

management, personnel, physical location, assets, and
general business operation.

Id. These factors must be "analyzed in a flexible manner that
disregards mere questions of form and asks whether, in
substance, it was the intent of the successor to absorb and
continue the operation of the predecessor." Dutton v. Young
Men's Christian Ass'n of Buffalo Niagara, 171 N.Y.S.3d 276, 280
(4th Dept. 2022) (citation omitted). Nevertheless, a
prerequisite to a finding of a de facto merger is that "only one
corporation survives the transaction; the predecessor
corporation must be extinguished." Schumacher, 451 N.E.2d at
198.

   Neither of the Claimants adequately pleaded that the Debtor
was liable as a successor to the Brooklyn Diocese under this
theory.  The claims each acknowledged that the abuse had
occurred before the creation of the Diocese, at a time that the
parish was part of the Brooklyn Diocese and the abuser was
employed by the Brooklyn Diocese.  Both of the claims explained
that the abuser later worked for the Debtor.  Neither claim, nor
the Responses to the Debtor's Objection contain sufficient
factual allegations to support the de facto merger theory of
successor liability.  There is no dispute that the predecessor
corporation -- the Brooklyn Diocese -- continues to exist.  It
was not extinguished by the creation of the Debtor.

Accordingly, the Bankruptcy Court did not err in concluding that the Claimants failed plausibly to state a claim of successor liability.

## II.  Procedural Challenges

Appellants next raise a series of procedural challenges. First, that the Claim Form was defective because it did not allow for a statement of theories of successor liability. Second, that the Bankruptcy Court impermissibly considered the Renker Declaration.  And third, that the Bankruptcy Court erred in denying the Claimants discovery on the issue of successor liability.  The Appellants' arguments fail.

Since Claimants were permitted the opportunity to plead successor liability in their Responses, the arguments about the format of the Sexual Abuse Claim Form fail.  The Bankruptcy Court expressly considered the Responses in its evaluation of the sufficiency of the Claimants' allegations, and noted that "[t]he additional allegations made in [R]esponses indicate that the Claimants would not be able to cure these deficiencies if given an opportunity to amend their claims."  Somewhat surpisingly, Claimant No. 20018 argues that it was error for the Bankruptcy Court to consider Claimants' Responses under Rule 12(b)(6).  The Bankruptcy Court's consideration of the Responses

was of assistance to the Claimants and also a permissible exercise of discretion for a court sitting in equity.

Second, and contrary to the Claimants' assertions, the Bankruptcy Court did not rely on the Renker Declaration in making its determination that "[t]he proofs of claim and State Court Complaints make no allegations whatsoever as to successor liability, let alone any of the exceptions providing for it." Rather, the court noted only that the Renker Declaration provided "additional comfort" that the Debtor had not assumed liabilities from the Diocese of Brooklyn, and added in dicta that, had the Objection been subjected to a "Merits Hearing that required the Debtor to refute an essential element of the Claim with evidence," the Debtor has satisfied that burden with the Renker Declaration.  Thus, the Bankruptcy Court did not err in its application of Rule 12(b)(6), Fed. R. Civ. P.

Finally, the Bankruptcy Court properly denied discovery. The Supreme Court in Twombly noted that "proceeding to []discovery can be expensive" and prescribed that a "court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  550 U.S. at 558 (citation omitted).  Here, the Bankruptcy Court's conclusion that no plausible claim for relief has been pled justifies the denial of discovery.  Id. at 559;

18

see also Iqbal, 556 U.S. at 686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."). Thus, the Bankruptcy Court's denial of discovery is affirmed.

## Conclusion

The Claimants' appeals are denied. The June 9, 2023 Order of the United States Bankruptcy Court for the Southern District of New York dismissing claims no. 20018 and 90526 with prejudice under Federal Rule of Civil Procedure 12(b)(6) is affirmed.

Dated:     New York, New York
           October 6, 2023

                                    DENISE COTE
                             United States District Judge

19